**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**JORDAN PROPERTIES, LTD.**                                              **PLAINTIFF**

**V.**                                                           **NO. 4:22-CV-193-DMB-DAS**

**CITY OF CLEVELAND, MISSISSIPPI
and JOHN DOES 1-3**                                              **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

After the City of Cleveland demolished a rental house owned by Jordan Properties, Ltd.,

Jordan Properties sued the City asserting federal and state claims.  In response to the City's

motion for judgment on the pleadings, Jordan Properties abandoned its state law due process

claim so it will be dismissed.  And because the complaint fails to allege facts to support

municipal liability on the federal due process claim and because the state law takings claim is

barred by Jordan Properties' failure to appeal the City's adjudication of the property as a danger

to the public, the motion will be granted as to those claims.  However, Jordan Properties will be

allowed to seek leave to amend.

**I**
<u>**Procedural History**</u>

On October 21, 2022, Jordan Properties, Ltd., filed a complaint in the Circuit Court of

Bolivar County, Mississippi, against the City of Cleveland, Mississippi, and "John Does 1-3."

Doc. #2.  The complaint alleges the City demolished a rental house owned by Jordan Properties

and contains three counts:  (1) "taking without compensation under Mississippi law;" (2)

"Violation of the due process clause of the Mississippi Constitution;" and (3) "Liability of the

City and John Doe Defendants pursuant [to] the federal due process clause and 42 U.S.C. §

1983."  *Id.* at 5–8.  Asserting federal question jurisdiction, the City removed the case to the

United States District Court for the Northern District of Mississippi on December 21, 2022. Doc. #1.

After filing an answer to the complaint,[1] the City filed a "Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment." Doc. #5. The motion is fully briefed. Docs. #6, #10, #15.

## II
## Character of the Motion and Applicable Standard

When a party moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), courts apply "the same standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022).

> While a party is entitled to file a motion seeking both Rule 12(b)(6) and summary judgment relief as alternatives, such motions are discouraged because hybrid motions often fail to properly analyze the claims separately under each rule. Where a defendant has moved for summary judgment under Rule 56 as an alternative to dismissal under Rule 12(b)(6), the decision regarding whether or not to treat the motion to dismiss as one for summary judgment is committed to the sound discretion of the trial court. As a practical matter, if the motion contains only a Rule 12(b)(6) or only a summary judgment analysis, then it is properly considered only a motion brought under that standard.

*James v. Cleveland Sch. Dist.*, No. 4:19-cv-66, 2020 WL 5604660, at *2 (N.D. Miss. Sept. 18, 2020) (cleaned up).

While the City's motion seeks judgment on the pleadings under Rule 12(c) or summary judgment pursuant to Rule 56,[2] the City's memorandum brief only sets forth the Rule 12(c) standard. Doc. #6 at 5–6. Thus, the Court will treat the motion only as one requesting judgment on the pleadings.

"To survive a Rule 12(c) motion, a complaint must contain sufficient factual matter,

---

[1] Doc. #4.

[2] Doc. #5 at 1. The motion also incorrectly references the Mississippi Rules of Civil Procedure rather than the Federal Rules.

accepted as true, to state a claim to relief that is plausible on its face." *Laviage*, 47 F.4th at 405 (internal quotation marks omitted). In reviewing such a motion:

> the court accepts all well-pled facts as true, drawing all reasonable inferences in favor of the nonmoving party. But the court does not presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.

*Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (cleaned up). A court's review is "generally limited to the contents of the pleadings, including attachments thereto. The pleadings include the complaint, answer to the complaint, and if the court orders one, a reply to the answer." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) (cleaned up).

## III
## Factual Allegations

"Jordan Properties owned a rental house in the City with an address of 215 N. Third Avenue (hereinafter the 'Property')." Doc. #2 at 2. On April 8, 2020, "the City (acting through Code Official Danita McClure) sent a letter to Jordan Properties stating that the Property 'is alleged to be in need of cleaning pursuant to Mississippi Code Annotated § 21-19-11.'" *Id.* The letter advised:

> The Board of Alderman of the City of Cleveland has authorized this notice to be sent to you regarding 215 N. Third Avenue. This property is alleged to be in need of cleaning pursuant to Mississippi Code Annotated §21-19-11. This statute allows a municipality to clean any property in its city limits which is found to be a menace to the public health, safety and welfare of the community. If the property is found to be such a nuisance, the city may enter the property and clean the property by removing any dilapidated buildings, rubbish, cutting weeds and grass, removing fences, outside toilets, and personal property.
>
> You have an opportunity to appear before the Mayor and Board of Alderman to contest this allegation regarding the subject property. A hearing will be held on 05/05/2020 at 6:30 p.m. in the Board Room at City Hall.
>
> Adjudication at the hearing that the parcel is in need of cleaning will authorize the City to use its employees to enter the property to perform any necessary cleaning

including, but not limited to, removing any dilapidated buildings, rubbish, cutting weeds and grass, removing fences, outside toilets, and personal property.

An adjudication at the hearing that the parcel is in need of cleaning will also authorize the municipality to re-enter the property or parcel of land for a period of one (1) year after the hearing without any additional hearings as long as notice is posted on the property or parcel of land and at the city hall or another place in the city which commonly posts such notices at least 7 days before the property or parcel is re-entered for cleaning.

Doc. #4-1.[3]

The day before the scheduled hearing, "a representative of Jordan Properties contacted … McClure and requested an extension for the Property and explained that renovations were ongoing." Doc. #2 at 3. "McClure responded 'Yes sir! You're welcome.'" *Id.* "According to the Minutes, at the May 5, 2020, hearing, the Mayor and City Aldermen adjudicated the Property as 'dilapidated structure, junk and overgrowth.'" *Id.* There was not a representative of Jordan Properties at the hearing and the minutes were not sent to Jordan Properties. *Id.*

On July 9, 2020, McClure "wrote to a representative of Jordan Properties" that the "grass is tall and needs to be cut" at the Property. *Id.* Jordan Properties acknowledged the message. *Id.* The next day, the City informed Jordan Properties by letter "that it intended to 're-enter' the Property to perform 'necessary follow-up cleaning'" on July 17, 2020. *Id.* at 4. Jordan Properties "does not know what cleaning was conducted" but "[w]hatever was done between May 5, 2020, and July 10, 2020" and on July 17, 2020, "it did not include demolition of the residence on the Property." *Id.*

"Sometime in early 2021, and without any notice to Jordan Properties, the City caused the residence on the Property to be completely demolished." *Id.* at 5. "The City's file does not contain any evidence that the necessary postings were made prior to the demolition …." *Id.*

---

[3] Because the City attached the letter to its answer, it is a part of the pleadings and may be considered on a Rule 12(c) motion. *See Bosarge*, 796 F.3d at 440.

**IV**
**Federal Claim**

The City argues the § 1983 claim fails because (1) "Jordan received the statutorily required notice and failed to appear at the City meeting where his property was being discussed [and it] also received an additional follow-up notice and still took no action;" (2) "there is no policy maker identified or custom or policy of the City which was the moving fore [sic] behind the alleged violation" as required to support municipal liability; and (3) to the extent a substantive due process claim is alleged, "there is no allegation any decision of the City was arbitrary or capricious." Doc. #6 at 16.

Jordan Properties responds that "[t]he communications from the City's Code Official were constitutionally insufficient to inform [it] that it was at risk of having its entire rental home demolished" because it "was merely told to cut the grass," and because "this case is at [an] early stage," it "cannot be penalized … for not knowing exactly how 'things went down.'" Doc. #10 at PageID 189. The City replies that it "followed the letter of the law in sending the notices on this property and cannot be held liable for any procedural due process violation when [it] provided the statutorily mandated process to Jordan." Doc. #15 at 8.

> Under 42 U.S.C. § 1983, one may sue every person who, under color of any statute, ordinance, regulation, custom, or usage of any State violates his or her constitutional rights. Based on this language, the Supreme Court has explained that to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.

*Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (cleaned up) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). While the statute specifically refers to a "person," "[i]n *Monell v. Department of Social Services*, the Supreme Court held that municipalities may be sued under § 1983 but cannot be held liable for acts of their employees under a theory of *respondeat superior*." *Id.* at 777.

5

Thus, "the fact that a constitutional violation occurred is ordinarily not enough to trigger municipal liability." *Kinnison v. City of San Antonio*, 480 F. App'x 271, 274 (5th Cir. 2012). Rather, "to state a claim against a municipality under *Monell* …, [a plaintiff] must plead that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Gomez*, 18 F.4th at 777 (internal quotation marks omitted).

## A. Constitutional Violation

Jordan Properties alleges it was "deprived of its property by the City" and that such deprivation "violated the due process clause of the Fourteenth Amendment of the United States Constitution." Doc. #2 at 7.

The Fourteenth Amendment provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

> The Supreme Court has described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest. Due process, however, does not require that a property owner receive actual notice before the government may take his property. A state actor need only provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Kinnison*, 480 F. App'x at 276 (cleaned up) (quoting various U.S. Supreme Court cases). The government "also must provide [an individual] with a meaningful opportunity to be heard." *Freeman v. City of Dallas*, 186 F.3d 601, 606 (5th Cir. 1999). Courts consider and balance "three distinct factors" in assessing what process is due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Here, the City referenced "Mississippi Code Annotated § 21-19-11" in the letters it sent to Jordan Properties. Docs. #4-1, #4-2. That statute sets forth requirements for notice and a hearing before entering a property:

> To determine whether property or parcel of land located within a municipality is in such a state of uncleanliness as to be a menace to the public health, safety and welfare of the community, a governing authority of any municipality shall conduct a hearing, on its own motion, or upon the receipt of a petition signed by a majority of the residents residing within four hundred (400) feet of any property or parcel of land alleged to be in need of the cleaning. Notice shall be provided to the property owner by:
>
>> (a) United States mail two (2) weeks before the date of the hearing mailed to the address of the subject property, except where the land or structure(s) is apparently vacant, and to the address where the ad valorem tax notice for such property is sent by the office charged with collecting ad valorem tax; and
>>
>> (b) Posting notice for at least two (2) weeks before the date of a hearing on the property or parcel of land alleged to be in need of cleaning and at city hall or another place in the municipality where such notices are posted.
>
> Any notice required by this section shall include language that informs the property owner that an adjudication at the hearing that the property or parcel of land is in need of cleaning will authorize the municipality to reenter the property or parcel of land for a period of two (2) years after final adjudication without any further hearing if notice is posted on the property or parcel of land and at city hall or another place in the municipality where such notices are generally posted at least seven (7) days before the property or parcel of land is reentered for cleaning. A copy of the required notice mailed and posted as required by this section shall be recorded in the minutes of the governing authority in conjunction with the hearing required by this section.

Miss. Code Ann. § 21-19-11(1).

The allegations in the complaint and the copy of the April 8 letter show that before the May 5 hearing, the City provided to Jordan Properties the requisite mail notice of the May 5 hearing. Though the parties dispute the impact of the response to their request for an extension,

such is not dispositive of Jordan Properties' federal due process claim based on the lack of notice before the demolition of the house. Assuming, without deciding that the extension request did not impact the sufficiency of the mail notice, § 21-19-11 allows the City to reenter the property for "subsequent cleaning" only "upon seven (7) days' notice posted both on the property … and at city hall or another place in the municipality where such notices are generally posted." According to the complaint, there is nothing in the City's file showing the necessary postings were made before the demolition, and the last letter the City sent Jordan Properties informed it of the City's intention to reenter the Property *on July 17, 2020*, but the house was not demolished until early 2021. Doc. #2 at 4–5; *see* Doc. #4-2 (letter stating "this is your notice that the City intends to re-enter the subject property on July 17, 2020 to perform necessary follow-up cleaning"). Thus, the 2021 demolition appears to be a reentry separate and different from that contemplated to take place on July 17, 2020, and one which occurred without the requisite notice or posting, or without any indication of why such notice could not be given.[4] Considering the *Mathews* factors, (1) Jordan Properties had a significant private interest in the Property; (2) the City failed to provide notice that it would reenter the property in 2021, which increased the risk of an erroneous deprivation; and (3) while the City has a significant interest in protecting the public, there is no indication at this stage in the proceedings that waiting an additional seven days to provide the required notice and comply with the posting requirement would have prevented it from protecting that interest or involved burdensome fiscal and administrative burdens. Thus, Jordan Properties has sufficiently alleged a Fourteenth Amendment due process violation.

---

[4] The various exhibits to the City's answer also do not reflect notice of the subsequent reentry. *See* Docs. #4-1 to #4-5.

**B.  Municipal Liability**

Because "the fact that a constitutional violation occurred is ordinarily not enough to trigger municipal liability,"[5] the Court now must consider whether Jordan Properties has alleged sufficient facts to state a claim against the City.  In that regard, Jordan Properties must plead that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."  *Gomez*, 18 F.4th at 777.

Jordan Properties alleges in its complaint that "[s]ometime in early 2021, … the City caused the residence on the Property to be completely demolished" such that it was "deprived of its property" without notice and "the deprivation was caused by an official act of the City, by final policymakers, or both."  Doc. #2 at 5, 7–8.  However, the complaint does not contain any allegations that the decision to demolish the property was pursuant to an official policy promulgated by the municipal policymaker.  And despite Jordan Properties' arguments that it "cannot be penalized … for not knowing exactly how 'things went down,'"[6] it must do more than plead "in a conclusory fashion without meaningful factual content."  *Armstrong*, 60 F.4th at 276.  In the absence of "sufficient facts to support a *Monell* claim against the City,"[7] Jordan Properties has failed to state a claim against the City.

However, courts "should provide *at least* one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the plaintiff[] … [is] unwilling or unable to amend in a manner that will avoid dismissal."  *Dierlam v. Trump*, 977 F.3d 471, 478 n.44 (5th Cir. 2020) (cleaned up).  Accordingly, the City's motion for judgment on the pleadings will be granted but Jordan Properties will be allowed an opportunity to seek leave to amend.  *See Kim v.*

---

[5] *Kinnison*, 480 F. App'x at 274.

[6] Doc. #10 at PageID 189.

[7] *Gomez*, 18 F.4th at 780.

*Nationwide Mut. Ins. Co.*, __ F. Supp. 3d __, 2022 WL 2670393, at *11 (N.D. Tex. 2022) ("Although the court is granting … Nationwide's motion for judgment on the pleadings, it will permit Kim to replead ….").

## V
## State Law Claims

The City also seeks judgment on the pleadings on Jordan Properties' state law claims. Based on its conclusion that Jordan Properties failed to state a federal claim against the City, the Court ordinarily would decline to exercise supplemental jurisdiction over the state law claims.[8] But since Jordan Properties will be allowed to seek leave to amend its federal claim, the Court will proceed to address the state law claims.

### A. State Law Takings Claim

The City argues the "the state law takings claim must be dismissed as this Court has no jurisdiction over the matter" because Jordan Properties "failed to appeal [its] adjudication of the subject property as a public nuisance" and the "Mississippi Supreme Court has found the appeal process under *Miss. Code Ann.* § 11-51-75 'mandatory and jurisdictional.'" Doc. #6 at 6, 8. "Even if this Court finds it has jurisdiction, [the City argues] dismissal remains proper as the removal of the structure amounted to a valid exercise of the City's police power generally and specifically under *Mississippi Code Annotated* § 21-19-11." *Id.* at 10.

Jordan Properties responds that it did not receive notice the house would be demolished and it could not appeal the May 5, 2020, adjudication of the property as a nuisance because it "was not given notice of the City's actions within those 10 days. To the contrary, the Code Official told [it] the hearing would be continued." Doc. #10 at PageID 187. Jordan Properties

---

[8] *See* 28 U.S.C. § 1367(c)(3) (allowing a court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction").

argues that because the notice to appear at the hearing was defective, it "was not required to appeal pursuant to Section 11-51-75." *Id.* at PageID 188.

The City replies that Jordan Properties' arguments fail because "(1) [it] knew the clean-up of the property could result in the removal of the dilapidated structure; (2) there is no finite date on when the City must clean up after notice; and (3) Jordan cannot 'assume' clean-up would be limited to any particular City action." Doc. #15 at 1–2.

Mississippi Code § 11-51-75 provides that "[a]ny person aggrieved by a judgment or decision of the … governing authority of a municipality, may appeal the judgment or decision to the circuit court … within ten (10) days from the date … the governing authority of the municipality rendered the judgment or decision." The Mississippi Supreme Court has found "[t]he ten-day statutory limit in which to appeal a decision rendered by municipal authorities … both mandatory and jurisdictional." *City of Jackson v. Jordon*, 202 So. 3d 199, 203 (Miss. 2016). But "[w]hen notice to appear at a hearing is deficient, the remedy of appeal provided in Section 11-51-75 is not exclusive." *Id.* at 204. In *Jordan*, the Mississippi Supreme Court found § 11-51-75 inapplicable to the plaintiff's claims challenging the condemnation and demolition of his property pursuant to § 21-19-11 because although the city provided notice by publication, it "failed to provide the statutorily required two-weeks' notice." *Id.* That court also discussed in a positive light *Scarborough v. City of Pearl*, 60 So. 3d 193 (Miss. Ct. App. 2010), in which "Wayne Scarborough co-owned a parcel of property with his father, Percy;" before demolishing the property, "[t]he city notified Percy of a hearing regarding demolition but failed to notify Wayne;" and the Court of Appeals concluded that "Wayne had received inadequate notice" rendering the "appeal remedy moot." *Id.*

Here, there is no dispute that the April 8 letter provided more than § 21-19-11's required

two-week notice before the May 5, 2020, hearing. Doc. #2 at 3; *see* Doc. #4-1. Jordan Properties argues though that the notice was defective based on McClure's response to its request for an extension. Doc. #10 at PageID 187. However, Jordan Properties does not cite, nor has the Court found, any authority holding or even suggesting that McClure, as the "code official," had authority to grant an extension with respect to a hearing before the governing authority.[9] In the absence of such authority, the Court declines to accept that the notice provided was deficient. Consequently, since Jordan Properties failed to appeal the City's decision, its state law takings claim is barred.[10]

## B. State Law Due Process Claim

As for the state law due process claim, the City argues "any state law due process claim must be brought under" the Mississippi Tort Claims Act ("MTCA") and "there was a total failure to abide by the MTCA procedural requirements of a pre-suit notice to the City warranting dismissal of this claim." Doc. #6 at 12. Jordan Properties "agrees that the due process claim under the Mississippi Constitution may not proceed." Doc. #10 at PageID 190. Because Jordan Properties does not present any argument with respect to this claim, the Court deems such abandoned. The abandoned state law due process claim will be dismissed with prejudice and the motion for judgment on the pleadings will be denied as moot with respect to that claim.

## VI
## Conclusion

Jordan Properties' abandoned state law due process claim is **DISMISSED with**

---

[9] To the extent Jordan Properties asserts McClure had authority to grant an extension because she issued the letter, the letter provides that it was sent with the authorization of the Board of Aldermen of the City. Doc. #4-1.

[10] This is distinguishable from the federal claim, which is based on the lack of statutorily required notice and posting of the subsequent reentry to demolish the property because under § 21-19-11, if the property is adjudicated "a menace to the public health, safety and welfare of the community," a second hearing is not required for subsequent reentry. Because Jordan Properties has not shown the notice of the *hearing* was deficient, and it failed to appeal the City's adjudication of the Property, its claim is barred.

**prejudice**.  The City's motion for judgment on the pleadings [5] is **GRANTED in Part and DENIED in Part**.  It is GRANTED to the extent it seeks judgment on the pleadings with respect to the federal claim and the state law takings claim; it is DENIED as moot with respect to the state law due process claim.  Within fourteen (14) days of the entry of this order, Jordan Properties may seek leave to amend its complaint with respect to the federal due process claim.[11]

SO ORDERED, this 16th day of March, 2023.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[11] If Jordan Properties fails to seek leave to amend or if it is ultimately determined amendment would be futile, judgment will be entered for the City on the federal claim and the state law takings claim.